UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA,

    Plaintiff

v.                                      Case No: 2:19-cv-728-FtM-60MRM

APPROXIMATELY $126,880 IN
UNITED STATES CURRENCY,

    Defendant.
_____/

**ORDER DENYING SECOND RENEWED MOTION TO DISMISS VERIFIED COMPLAINT FOR FORFEITURE *IN REM* FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

This matter is before the Court on the Second Renewed Motion to Dismiss Verified Complaint for Forfeiture *In Rem* for Failure to State a Claim Upon Which Relief Can be Granted, filed by Claimants Quenita Mara Harris and Lorenzo Brown. (Doc. 39). Plaintiff United States of America (the "Government") filed a response in opposition to the motion. (Docs. 40; 31). Upon review of the motion, response, court file, and record, the Court finds as follows:[1]

---

[1] In support of an earlier motion to dismiss (Doc. 29), which this Court has denied as moot, Claimants had filed a reply memorandum. (Doc. 32). They obtained leave to file, but have not filed, a reply memorandum in connection with the instant motion. (Docs. 41; 43). Given the Government's adoption by reference of its response to that earlier motion, *see* (Doc. 40), the Court has considered the Claimants' previous reply in ruling on the current motion.

**Background**[2]

On May 23, 2019, Claimant Quenita Harris was driving a BMW, with Claimant Lorenzo Brown as a passenger, on the Interstate heading East to Miami, a known source city for cocaine and a major money laundering hub for drug proceeds. A deputy sheriff pulled the car over because the license tag had expired. Smelling marijuana, the deputy asked the passengers to step out and he searched the car. He found $106,880 in cash in a paper Gucci bag on the passenger floorboard, along with a loaded firearm, a small amount of marijuana, and Brown's identification and credit cards. The deputy found no documents indicating that the money had come from a bank or other legitimate source. Brown had additional marijuana in his sock and Ms. Harris also had a handgun in her purse.

Brown at first told the deputy that the money was his, but then moments later claimed that it belonged to Harris. Brown said there was about $120,000 in the bag and it was going to be used to buy a boat in Miami. While the deputy was speaking with Brown, a second deputy found another $20,000 on the rear floorboard of the BMW. All currency was bundled using currency straps; the denominations included hundreds, fifties and twenties.

Harris and Brown were interviewed separately. Harris said that she was the owner of the seized money, of which she claimed to have saved $55,000 - $60,000

---

[2] The Court accepts as true the facts alleged in the complaint for purposes of ruling on the pending motions to dismiss. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint."). The Court is not required to accept as true any legal conclusions couched as factual allegations. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986).

over a period of 15 to 20 years, storing the money in boxes in her house. Harris said that she was employed as a Certified Nursing Assistant and worked at a memory care facility where she was paid $16.50 an hour, and that before this she had worked in private nursing. Her total wages since 2003, according to Florida Department of Revenue records, have been only approximately $140,000. She lived in an apartment and paid $1,110 per month in rent.

Harris said that she had borrowed the rest of the money from "different friends," later described as "two friends," whose names she did not disclose. She indicated that she did not know how these friends acquired the money, that she had not counted the money, and that she had no idea how much she money had until law enforcement counted the currency. She said she had put the currency straps on the funds she had saved, but that her unidentified friends had also put currency straps on the funds they loaned her.

Harris said the money was to be used to buy a boat as a business, and that her friends who loaned her the money were going to go in on the boat, but she did not have a specific type of boat in mind, had not researched where she might buy a boat or from whom, and knew only that she planned to buy one "somewhere in Miami." Towards the end of the interview, she said that she did not know for sure whether any of the money was Brown's, although she did not think so.

Brown in a separate interview said that he and Harris were going to Miami to look for a boat to rent out, but did not know what kind of boat, did not know where in Miami they would look for a boat or from whom they would buy a boat,

and did not know where they would moor the boat once they bought it.  He admitted that he was the owner of the loaded firearm and marijuana found in the bag along with the cash and his identification and credit cards.  Contrary to his initial statement, Brown emphatically asserted that all of the seized money belonged to Harris and that none of it was his.

On October 2, 2019, the Government filed its Verified Complaint for Forfeiture *In Rem*, seeking that process of forfeiture be issued with respect to the seized funds and that the funds be forfeited to the Government.  Claimants' Second Renewed Motion to Dismiss argues that the complaint fails to state a legal claim to initiate forfeiture proceedings.

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing the [plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a). While Rule 8(a) does not demand "detailed factual allegations," it does require "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In order to survive a motion to dismiss, factual allegations must be sufficient "to state a claim to relief that is plausible on its face." *Id.* at 570.

When deciding a Rule 12(b)(6) motion, review is generally limited to the four corners of the complaint. *Rickman v. Precisionaire, Inc.*, 902 F. Supp. 232, 233 (M.D. Fla. 1995).  Furthermore, when reviewing a complaint for facial sufficiency, a

court "must accept [a] [p]laintiff's well pleaded facts as true, and construe the [c]omplaint in the light most favorable to the [p]laintiff." *Id*. (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[A] motion to dismiss should concern only the complaint's legal sufficiency, and is not a procedure for resolving factual questions or addressing the merits of the case." *Am. Int'l Specialty Lines Ins. Co. v. Mosaic Fertilizer, LLC*, 8:09-cv-1264-T-26TGW, 2009 WL 10671157, at *2 (M.D. Fla. 2009) (Lazzara, J.).

Additional standards govern the sufficiency of a complaint in asset forfeiture cases. Rule G(2) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Federal Rules of Civil Procedure, provides that the complaint must, among other things, "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." Supp. R. G(2)(f). Supplemental Rule E(2)(a) provides that the complaint must "state the circumstances from which the claim arises with such particularity that the . . . claimant will be able, without moving for a more definite statement, to commence and investigation of the facts and to frame a responsive pleading."

18 U.S.C. § 983(a)(3)(D), on the other hand, provides that "[n]o complaint may be dismissed on the ground that the Government did not have adequate evidence at the time the complaint was filed to establish forfeitability of the property." *See also* Supp. R. G(8)(b)(ii). 18 U.S.C. § 983(c)(2) provides that the Government may use evidence gathered after the filing of the complaint to establish that the property is subject to forfeiture.

## Analysis

The Government's burden at trial will be to prove by a preponderance of the evidence that the seized funds had a substantial connection to a transaction or transactions involving controlled substances. *See* (Doc. 1 at ¶ 7); 18 U.S.C. § 983(c)(1) and (c)(3); *United States v. All Funds in the Account of Property Futures, Inc.*, No. 08-81244-CIV-MARRA/JOHNSON, 2010 WL 11447277, at *3 (S.D. Fla. Feb. 18, 2010). The parties agree, correctly, that the Government in meeting that burden may rely on the totality of the circumstances. *See, e.g., United States v. $242,484.00*, 389 F.3d 1149, 1167 (11th Cir. 2004) (en banc). Thus, each item of evidence is not to be "pick[ed] off one by one, by conjuring up some alternative hypothesis of innocence to explain each circumstance in isolation." *Id*. Moreover, the Government need not "demonstrate that the seized currency was connected with any particular drug transaction; instead, the Government need only show that the money was 'related to some illegal drug transaction.'" *United States v. Currency $21,175.00 in U.S.*, 521 F. App'x 734, 739 (11th Cir. 2013) (quoting *$242,484.00,* 389 F.3d at 1160).

At the pleading stage, however, the complaint needs only to "state sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." To be sure, a bare bones assertion that the money is subject to forfeiture, without pleading a "whiff" of supporting evidence, would be insufficient. *United States v. Two Parcels of Real Prop. Located in Russell County, Ala.*, 92 F.3d 1123, 1127 (11th Cir. 1996). But here there is more. The presence of

an unusually large amount of cash in Claimants' car, in two separate locations on the floorboard, suggests illegal activity of some kind and weighs in favor of a reasonable belief that the funds were connected to illicit drugs. *See $242,484.00*, 389 F.3d at 1161 ("As a matter of common knowledge and common sense," unlike legitimate businesses, drug rings "commonly do use couriers to transport in cash their ill gotten gains, which can be huge."). Harris also stated that at home she kept this money in boxes stored around the house. As the United States points out, "[l]egitimate businesses or individuals usually keep large sums of money in banks, not boxes." (Doc. 31 at 13). Moreover, common sense also tells us that no one, not even the very wealthy, carries around over $100,000 in cash in a paper bag.

Both claimants had guns with them in the car, "tools" often used by those involved in the drug trade. *See United States v. Perez,* 648 F.2d 219, 224 (11th Cir.1981) ("[S]ubstantial dealers in narcotics keep firearms on their premises as tools of the trade almost to the same extent as they keep scales . . . glassine bags, cutting equipment, and other narcotic equipment.") (quoting *United States v. Wiener*, 534 F.2d 15, 18 (2d Cir. 1976)); *United States v. Smith,* 918 F.2d 1501, 1509 (11th Cir.1990) (noting that firearms are "tools of the trade" for drug dealers). Claimants were headed toward Miami, a known center for illegal drugs and related money laundering. *See $282,484*, 389 F.3d at 1163 (citing testimony and case law noting that Miami is a center for drug smuggling and money laundering).

Claimants' explanations as to the source and ownership of the money were vague and conflicting. Their purported plans for the money – to buy some kind of

boat, from someone unknown, somewhere in Miami, to be moored someplace unknown – could be viewed as implausible. *See $21,175.00*, 521 F. App'x at 740 (holding that presence of large amount of currency and the fact that the owner "failed to credibly explain why he withdrew money from his bank account and stashed it under his grandmother's bed weighs in favor of finding the currency was connected to illegal drug activity"); *United States v. $15,740.00 in United States Funds*, No. 5:07-cv-375 (HL), 2008 WL 2227511, at *1-2 (M.D. Ga. May 27, 2008) (holding that small amount of marijuana, presence of cash in oddly wrapped bundles, and fact that driver claimed to be going to Atlanta to buy a truck but could not say where in Atlanta she was going supported reasonable belief that the funds were subject to forfeiture).

Claimants' arguments for dismissal do not address the totality of the circumstances alleged by the Government. Instead, their attack on the sufficiency of the complaint seeks to "pick off" each discrete fact, take it in isolation, and argue that it does not show a connection to a drug transaction. *See* (Docs. 39 at 3-7; 32 at 1-8). As Claimants admit, that is not the correct approach.

It is true that in many asset forfeiture cases, additional facts pleaded or proved have connected the seized property more specifically to drug activity, such as a trained police dog alerting on the funds, drug paraphernalia being found nearby, or a prior connection of the owners to illegal drug activity. *See, e.g., United States v. $121,100.00 in United States Currency*, 999 F.2d 1503, 1507-08 (11th Cir. 1993); *United States v. $22,900.00 in U.S. Currency*, 8:14-CV-467-T-30MAP, 2014 WL

3809175, at *3 (M.D. Fla. Aug. 1, 2014).  At trial, the Government may seek to adduce additional evidence, if it exists, in order to increase its changes of prevailing.  But at the pleading stage the Government is not required to have adequate evidence to establish forfeitability.  18 U.S.C. § 983(a)(3)(D).  The facts set forth in the complaint are sufficiently detailed to support a reasonable belief that the government will be able to prove its case at trial.  Supp. R. G(2)(f).  The complaint is also sufficient to allow the Claimants to frame their response and begin an investigation.  Supp. Rule E(2)(a).

It is therefore

**ORDERED**, **ADJUDGED**, and **DECREED**:

1. Claimants "Second Renewed Motion to Dismiss Verified Complaint for Forfeiture *In Rem* for Failure to State a Claim upon which Relief Can be Granted" (Doc. 39) is **DENIED**.

2. Claimants are directed to file an answer on or before July 8, 2020.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 17th day of June, 2020.

**TOM BARBER**
**UNITED STATES DISTRICT JUDGE**